## COLLINS *v.* SOUTHERN BRICK COMPANY.

### Opinion delivered December 6, 1909.

CORPORATION—STOCK SUBSCRIPTION—PAROL CONTRADICTION.—Under the general rule of evidence that a written agreement cannot be varied or

added to by parol evidence, it is not competent for a subscriber to stock in a corporation to allege that he is but a conditional subscriber; such condition must be inserted in the writing in order to be effectual.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*J. W. Blackwood,* for appellant.

The admission of parol evidence to establish a contemporaneous collateral substantive agreement does not violate the rule that it will not be admitted to contradict or vary the terms of a written contract. 27 Ark. 511; 56 Ark. 399; 64 Ark. 653; 20 Ark. 460. If a corporation accepts the benefits of an agreement entered into by its promoters, it will not be permitted to deny that it agreed to assume the burdens of the same. 1 Morawetz, § 549. The contract was voidable at the option of appellant. 1 Morawetz, § 49. The subscription was upon a condition precedent that the subscriber become manager of the corporation. 1 Morawetz, §§ 78 and 79. The promise of one was the consideration for the promise of the other. 12 U. S. App. 433; 70 Ill. 99; 25 Ind. 454; 17 Me. 372; 75 Me. 267; 23 Pick. 400; 40 N. J. Eq. 426; 8 Johns. 306; 75 Hun 145; 4 Ire. L. 257; 101 N. C. 284; 7 O. St. 275; 96 Pa. St. 447; 48 Vt. 239.

*Wiley & Clayton,* for appellee.

The contract of subscription is mutual, and creates a vested right in the contract of every other subscriber. 77 Ill. 335; 9 Am. Dec. note 99. Subscriptions before organization must be unconditional. 1 Morawetz, § 85; *Id.* 83. Even if this were permissible, it could not be proved by parol testimony. 20 Ark. 443; 69 Ill. 502; 13 Ind. 404. Cook on Corp., § 137. Such secret agreements are a fraud upon other subscribers, and will not be enforced. 40 Minn. 110; 41 N. W. 1026; 3 L. R. A. 796; 90 Pa. St. 269; 43 Conn. 86.

McCULLOCH, C. J. This is an action instituted in the chancery court of Pulaski County by the Southern Brick Company, a domestic corporation, against E. T. Collins, to recover on a note executed by the latter for the amount of his stock subscription, and to enforce a lien on the stock certificate. The defendant filed an answer and cross complaint, in which he alleged that he

subscribed for the stock and executed the note on condition that he would be made manager of the business of the corporation when organized, and that said condition had not been performed. He alleged that two of the promoters of the corporation, Butler and Wayman, solicited his subscription, and, with the knowledge and consent of the other promoters, represented to him that if he subscribed for the stock to the amount of two thousand dollars he would be made manager of the corporation when organized, and that he subscribed the amount on that condition. He also alleged that at the organization of the corporation, and when he executed the note for the amount of his subscription, the matter of his employment was again discussed, and it was agreed that he should be made manager. The case was heard on the depositions of numerous witnesses, and from the decree rendered in favor of the plaintiff defendant appeals.

Another action against several others, to recover on a joint note executed for a stock subscription, was consolidated with the first-named case, and a decree was rendered in favor of the plaintiff, from which defendant, Collins, also appeals. The defense in that case was different from the defense in this, but defendant now concedes that the findings in that case were not against the preponderance of the testimony, and that the decree should be affirmed. The first-named case only will be discussed.

G. M. Hampton, E. R. Buster and B. H. Woods owned a brick plant at Kingsland, Ark., which was not very successful because of the scarcity or poor quality of the brick clay at that place. There is evidence that B. W. Green, George Reaves, A. D. Beach and R. C. Butler, of Little Rock, owned lands near that city on which was situated an excellent quality of brick clay. These parties were brought together in negotiations for a plan to bring the Kingsland plant to the clay lands near Little Rock and operate it.

A plan was proposed to organize a corporation to acquire both the brick plant and the clay lands, for the purpose of operating the business. The Fordyce parties proposed to put in the Kingsland plant at an estimated value of $30,000 and to take that amount of stock in the new corporation, as well as to subscribe for a certain amount of cash stock, and that the Little Rock parties should procure subscriptions

for a certain amount of cash stock. Growing out of these negotiations and proposals, the plaintiff corporation, Southern Brick Company, was organized. The Little Rock parties turned over to R. C. Butler the task of procuring sufficient subscriptions to take up the amount of stock to be subscribed here, and Butler secured the assistance of C. L. Wayman in the undertaking. The amount of subscriptions secured here and at Fordyce aggregated $67,300, which included the subscriptions of R. C. Butler, C. L. Wayman, B. W. Green and defendant Collins. All of the subscribers signed a written subscription agreement to take the amount of stock set opposite their respective signatures. Butler and Wayman solicited and obtained the subscription of defendant Collins. After repeated interviews, in which they sought to interest him, they stated to him that they wanted him to be manager of the new concern, and he replied that he did not want any stock unless he should be manager, but that if they wanted him to be manager he would taken $2,000. This is undisputed, and it is not contended that any representations were made to defendant further than as above stated.

Sometime later the subscribers met in Butler's office in Little Rock for the purpose of organizing the corporation. At that meeting defendant executed the note in suit to cover the amount of stock he had subscribed, and there is testimony that he and Hampton had a conversation in which the latter promised that he should be manager at a salary of $100 per month for the first two months, and $125 per month thereafter. There is, however, a conflict as to this, and the preponderance of the evidence seems to be against it.

The contention of the defendant that he is not bound by his stock subscription notes, which was based on the alleged unperformed condition that he was to be made manager of the business when organized, cannot be sustained, for the well-recognized reason that a condition resting in parol cannot be engrafted on a written stock subscription. The written agreement signed by the subscribers constituted a contract between them, the mutuality of the agreement being the consideration; and it cannot be varied nor contradicted by parol testimony, nor can an oral agreement or condition be engrafted upon it. *Mississippi, O. & R. R. Rd. Co.* v. *Cross,* 20 Ark. 443; 1 Cook on Corp. (6 Ed.), § § 77, 81,

137; 1 Morawetz on Corp. § 77; 2 Beach, Priv. Corp., § 531; 10 Cyc. 413-415; 26 Am. & Eng. Enc. Law 911, and cases cited.

"Under the general rule of evidence that a written agreement cannot be varied or added to by parol evidence, it is not competent for a subscriber to stock to allege that he is but a conditional subscriber. The condition must be inserted in the writing in order to be effectual." 1 Cook on Corp. § 81.

"A subscription for shares in a corporation is a contract in writing, and therefore cannot be proved by parol evidence until the absence of the original has been accounted for. Nor can the terms of the contract entered into by a subscriber be varied by parol evidence of a special agreement or condition made prior to or contemporaneous with the subscription." 1 Morawetz, Corp. § 77.

"Parol evidence is not admissible to vary the terms of a subscription to the capital stock of a corporation, or to show a discharge therefrom in any manner other than that required by the terms of subscription, charter and by-laws. All separate agreements and conditions made at the time of subscribing, which are inconsistent with the written contract, are void, whether they be verbal or are contained in a separate written contract." 2 Beach, Priv. Corp. § 531.

This rule does not, however, exclude parol proof of such misrepresentations or fraud as would vitiate the contract; but the proof in this case is far from establishing fraud in the procurement of the defendant's subscription. The statements of Butler and Wayman to him only expressed their desire that he should be manager, and, at most, amounted to a promise that he should be made manager. The proof fails to show that they were authorized by any one to make such a promise, much less by all the other subscribers. No such state of facts is shown as would authorize a court of equity to grant relief from the contract on account of fraud.

Both of the decrees against the defendant are affirmed.