HICKS v. HELM, RECEIVER.

Opinion delivered November 27, 1916.

CORPORATIONS—AGREEMENT TO PURCHASE STOCK—NOTE—DEFENSES.—
Appellant agreed to purchase stock in a certain corporation, and gave his note in payment therefor. *Held*, the note could be collected, although the agent of the corporation who solicited the subscription, agreed orally that the corporation would set aside a certain sinking fund for the protection of the capital stock, which was not done.

Appeal from Pulaski Chancery Court; *Jno. E. Martineau*, Chancellor; affirmed.

*Moore, Smith, Moore & Trieber* and *Jno. T. Hicks*, for appellant.

1.   The note is void because of a total failure of consideration. Langdale on Contracts, § 45; 2 Black. Com. 443; 38 Ark. 127; Leake on Contracts, 547; 9 Cyc. 369; 19 L. T. Rep. (New Series) 74; 10 Cyc. 429 e.

*T. N. Robertson*, for appellee.

1.   The charter of the company was appellant's contract of subscription and purchase. The oral representations of the agents were not made by authority of the company and were not the consideration, and failure to comply with same is no defense. 20 Ark. 452; 92 *Id*. 504-507; 111 *Id*. 239, 245-6.

WOOD, J.   This action was begun by the appellee as receiver of the Arkansas Life Insurance Company, an Arkansas corporation, against the appellant John T. Hicks, on a promissory note executed by him to the insurance company in the sum of $2,000.00, due six months after date with 6 per cent. interest, and also to recover on a due bill for $60.00 payable May 1, 1912.

The complaint alleged that the note and due bill were past due and unpaid; that the appellant deposited certain corporate stock as collateral with the insurance company and judgment was asked for the principal and interest of both instruments and for foreclosure of the company's lien on the collateral. The appellant filed his answer and cross-complaint and in his answer he admitted the execution of the instruments and the deposit by him of collateral stock with the insurance company, but denied that he was indebted to the company and to the plaintiff, appellee, its receiver, and prayed that the stocks be surrendered and that he be discharged with costs.

The appellee demurred to the cross-complaint, which demurrer the court sustained and the appellant

refusing to plead further the court entered a decree in favor of the appellee in the sum of $2,447.95, the amount of the appellee's debt and interest, from which decree this appeal has been duly prosecuted.

The appellant's cross-complaint alleges in substance and he contends that he was induced to purchase shares of the capital stock of the insurance company and to execute the note and due bill in suit therefor upon the representations of its agents and the agreement upon the part of the corporation that the amount of money that might be received by the corporation in excess of the face value of its capital stock then being sold, should be placed by the corporation in a surplus fund to the end that its capital stock might not be impaired and that the company might thereby be enabled to prosecute its business with profit; that without such representations and agreement the capital stock purchased by appellant would have been worthless and the company would not have been permitted to transact business in the State; that appellant purchased the stock relying upon the representations and agreement of the corporation to create the surplus fund above mentioned, and executed his note and due bill with the *bona fide* intention of paying same, but that the insurance company wholly failed to carry out its agreement to create and maintain the surplus fund, thereby rendering the stock purchased by the appellant absolutely worthless; that instead of using the surplus to pay the legitimate indebtedness of the company, it squandered the same in exorbitant salaries to its officers and agents and in *ultra vires* enterprises; that by reason of the failure of the company to perform its agreement to create and use the surplus fund to prevent the impairment of its capital stock as represented to the appellant, the stock purchased by him was worthless and the note and due bill upon which the suit is based were wholly without consideration and void.

The contention of appellant is contrary to former decisions of this court, and therefore cannot be sustained. In the case of *Mississippi, Ouachita and Red River Ry.*

*Co.* v. *Cross,* 20 Ark. 452, this court said: "If when a subscriber for stock is sued for calls made upon it he may defeat the transaction by showing that the directors of the company have violated the charter by departing from the route or points fixed by it for the location of the road, there is no good reason why he may not defeat the suit by making it appear that they are appropriating the funds of the company to unauthorized purposes; or that the directors and officers of the company are consuming the funds for their own purposes, and utterly neglecting to progress its enterprise; or wholly incompetent to prosecute it to a successful termination; or any other abuse of the charter.   If the door were once opened for such defenses in every suit brought by a corporation the conduct of its directors would be canvassed and collateral issues would become interminable. As above remarked, the charter is the law of the subscriber's contract.   If directors undertake to make an unwarranted departure from the provisions of the charter, in the location or construction of the road or in the appropriation of the funds of the company, the stockholder has his remedy by injunction.   Not to enjoin the collection of calls due upon his stock, but to restrain the corporation from the particular violation or abuse of its charter complained of."

In *Collins* v. *Southern Brick Co.,* 92 Ark. 504-507, we said: "The contention of the defendant that he was not bound by his stock subscription notes which was based on the alleged unperformed condition that he was to be made manager of the business when organized cannot be sustained, for the well recognized reason that a condition resting in parol cannot be engrafted on a written stock subscription.   The written agreement signed by the subscribers constituted the contract between them, the mutuality of the agreement being the consideration; and it cannot be varied nor contradicted by parol testimony, nor can any oral agreement or condition be engrafted upon it. * * * Parol evidence is not admissible to vary the terms of a subscription to the capital stock of a corporation, or to show a discharge

therefrom in any manner other than that required by the terms of subscription, charter and by-law. All separate agreements and conditions made at the time of subscribing which are inconsistent with the written contract are void, whether they be verbal or contained in a separate written contract." See also *Warner* v. *Bonds,* 111 Ark. 239, 245, 246. The allegations of appellant's cross-complaint show that fifty shares of the capital stock of the insurance company were issued to appellant, for which he executed the note in suit by which he agreed in writing to pay appellee the sum of $2,000.00 for value received. The appellant does not aver that the articles of association or by-laws or that the charter of the insurance company required that the company should create and maintain a surplus fund to meet its current liabilities and prevent the impairment of its capital stock, and that these were conditions precedent to the payment of his note, or the performance of the contract on his part. The allegations of the appellant's cross-complaint show that he got the capital stock, the thing that he purchased, and that this contract of purchase on his part was evidenced by the note in suit. The allegations of appellant's cross-complaint show that the representations and agreement of the company to create and maintain a surplus fund were but oral representations and agreements upon the part of the agents of the company that it would do certain things in the future. Nowhere is it alleged that the articles of association or by-laws, or the certificate showing the purposes for which the corporation was formed, or the charter, which according to the above cases constitutes the law of appellant's contract, sets forth that the corporation was to create and maintain the alleged surplus fund. Appellant does not allege, and it is not specified in his note as a condition precedent, that same was to be paid only upon condition that the company should create and maintain a surplus fund out of the excess over the face value paid into the treasury of the corporation by the subscribers and purchasers of its capital stock. Conceding that the

allegations of appellant's cross-complaint are true, they only show that the selling agents of the company made appellant certain oral representations which the company had not performed, but, as pointed out in the above cases, such testimony could not be admitted to vary the written contract upon which the appellee predicates his suit. If the insurance company could be bound by these alleged representations of its selling agents, appellant as a stockholder could not set up the failure upon the part of the company to comply with these representations in defense to a suit against him for the purchase money of his stock. That is not his remedy, as shown by the opinion in *Mississippi, Ouachita & Red River Ry. Co.* v. *Cross, supra.*

The decree is therefore correct and it is affirmed.