Val Verde Hotel Co. v. Hubbell, 27 N. M. 545

(No. 2566.   Nov. 28, 1921.)

# VAL VERDE HOTEL CO. V. HUBBELL.

(Rehearing Denied Jan. 7, 1922.)

### SYLLABUS BY THE COURT.

(1)   Parol understanding held to devitalize written contract of subscription to capital stock, and to change the purpose in respect to a matter plainly covered by its terms and therefore to be inadmissable.                                   P. 546

(2)   Where the statute under which a corporation is organized permits organization upon subscription of less than the authorized capital stock, subscriptions made after incorporation are not subject to the implied condition that all the authorized capital shall be subscribed.          P. 548

Appeal from District Court, Socorro County; Baca, Judge.

Action by the Val Verde Hotel Company against Frank A. Hubbell.   Judgment for plaintiff, and defendant appeals.   Affirmed.

Marron & Wood, of Albuquerque, for appellant.

James G. Fitch, of Socorro, for appellee.

### OPINION OF THE COURT.

DAVIS, J.   This is an action by the Val Verde Hotel Company upon a subscription made to its stock by Frank A. Hubbell.   The issue was presented under a demurrer to an affirmative defense set up in the answer.   The complaint alleged the incorporation of the company with an authorized capital stock of $75,000, and that the defendant subscribed for 10 shares at $100 a share, the par value, to be paid at certain specified times, the subscription signed by him and by other parties being in the following form:

"We, the undersigned, subscribe and agree to pay for the number of shares of stock in the Val Verde Hotel Company, set opposite our names, on a basis of one hundred dollars per share, to be paid for as follows:

"Fifty per cent. on or before June 1st, and the balance

Val Verde Hotel Co. v. Hubbell, 27 N. M. 545

of fifty per cent. on or before July 1, 1918:

"Lots 1, 2, 3, 4, 5, and 6, block 45, Stapleton addition—142x150—donated by C. T. Brown.

| Name. | Address. | Shares. |
|-------|----------|---------|
| Frank A. Hubbell | Albuquerque | 10" |

The defendant answered, admitting his signature, but alleging, in substance, that when he was requested to subscribe to this stock he was willing to contribute only $250 and to take stock to that par value only, and so stated to the persons soliciting the subscription; that these persons then verbally agreed that if he would sign for the 10 shares they would either procure other parties to subscribe for 7½ shares of the 10, or take them themselves, and that they would not deliver the subscription list to the company unless and until they had so provided for the 7½ shares; and defendant alleged that he never authorized a delivery of his subscription under any other conditions. Plaintiff demurred to this defense on the general ground that the parol matters set up were not effective to vary or alter the terms of the written instrument. The district court sustained the demurrer.

[1] The first question for determination here is as to the correctness of this ruling. The admissibility of oral agreements made contemporaneously with written contracts has been fully discussed by this court in Locke v. Murdock, 20 N. M. 522, 151 Pac. 298, L. R. A. 1917B, 267, Baca v. Fleming, 25 N. M. 643, 187 Pac. 277, and Prentice v. Vesper Automobile Co. et al, 27 N. M. 368, 202 Pac. 121. It is unnecessary to review the authorities. In the second case cited this court held that the parol agreement, to be enforceable, must be in respect of a matter distinct from that covered by the written contract, and that the party to that contract may not prove a parol agreement which devitalizes the writing and changes its stated purpose. Tested

by this rule, the parol understanding between Hubbell and the individuals who obtained his signature to the subscription cannot be considered. The subscription on its face is an absolute one for 10 shares of stock. The attempt is to change it by parol to a subscription for 2½ shares. To admit such a parol understanding would be to clearly devitalize the writing and change its purpose in respect to a matter plainly covered by its terms. This general rule is applicable to stock subscriptions in principle, and the authorities so hold. Collins v. South Brick Co., 92 Ark. 504, 123 S. W. 652, 19 Ann. Cas. 882 (note), 135 Am. St. Rep. 197.

Appellant attempts to avoid the effect of this rule by allegations that delivery of the subscription was not to have been made until the oral promise was complied with. A conditional delivery of a written instrument arises when the party executing it, although parting with its possession, authorizes its delivery to the other party only upon the occurring of a future event. In such a case the instrument does not become binding until the actual delivery, but at the time of the execution of the instrument it is intended that, when delivered, it shall speak according to its expressed terms. When made it expresses the agreement, but that agreement may or may not come into effect according to whether or not the terms of the conditional delivery are fulfilled.

Appellant's answer does not state such a case. According to his plea and under the oral agreement, his subscription was never to become effective for the 10 shares whether delivery was made or not. His contention, baldly stated, is that he agreed in writing to take 10 shares, and by parol to take only 2½, and that other persons were to take the balance. His contract stated that he would pay for these 10 shares at specified times; his answer says that he

was never to pay for them, but only for a part. The contract was not delivered to these persons conditionally upon the happening of a future event, upon the occurrence of which it would become effective, but under a parol understanding that never and irrespective of the occurrence or nonoccurrence of the events stipulated should it become effective. This is simply to attempt to alter a clear, written agreement, and may not be done. The demurrer to the answer was properly sustained.

[2] The demurrer filed by plaintiff to defendant's answer searches the record, and appellant under this familiar rule, raises the question of the sufficiency of the complaint, contending that it does not state a cause of action, since it fails to allege that all of the capital stock had been subscribed. Cases may be found from many states holding that the engagement of the individual subscriber to take stock is subject to an implied condition that all the authorized capital shall be subscribed. Such cases will be found in Cook on Corporations, (5th Ed.) § 176, and 2 Fletcher on Corporations 693. The reason for the rule is said to be that one who subscribes for a certain number of shares in effect agrees to become owner of an interest in the corporation in the proportion that the number of shares he is to take bears to the total number authorized, and, further, that he has a right to assume that the corporation will not commence business until all its proposed capital stock is provided for. If the statute under which the corporation is organized provides, or the articles of incorporation stipulate, that all the stock must be sold before the corporation may commence business, the rule has a logical foundation, and is doubtless a salutary one. But the decisions must be read in the light of the particular statute or situation to which they refer, and, when so considered, it will be found that those laying down the general rule have no bearing upon this particular case, which

must be decided under the statute of this state, since the company here under discussion is a New Mexico corporation.

Section 2, chapter 112, Laws 1917, provides that—

The certificate of a corporation must set out the amount of the total authorized capital stock of the corporation, which shall not be less than $3,000; the number of shares subscribed shall be the amount of capital stock with which the company shall commence business and shall be at least $2,000.

Section 3 of the same chapter provides that upon making the certificate and filing and recording it as the act requires, the "persons so associating," etc., from the date of filing shall constitute "a body corporate by the name set forth in said certificate."

Under these statutes there can be no presumption that all of the authorized capital stock of the corporation will be subscribed before it will commence its business. The law itself recognizes the difference between authorized capital and the capital with which it will begin its operations. It may be authorized to issue its stock to a total of $1,000,000 and yet commence business and carry it on for as long as it pleases with $2,000. The reason for the general rule announced in states having a different statute fails. One who subscribes for stock in a New Mexico corporation, after its incorporation, has a right to assume that stock to the amount of $2,000 has been subscribed, and his subscription may be conditioned upon the existence of that fact, but there can be no further implied condition as to subscriptions. He contracts with the knowledge that the corporation may commence business with the amount of subscribed stock stated in its articles, and he can ask for nothing more.

In the note to Morgan v. Landstreet, 16 Ann. Cas

1253, the rule we consider applicable in this state is expressed as follows:

"Where the statute authorizes the organization of a corporation upon subscription of less than the proposed capital stock, the rule requiring the subscription for the whole amount does not apply."

The note cites ample authority to support the text.

The complaint in this case alleges that the Hotel Company is a corporation organized under the laws of the state of New Mexico, and that it was duly incorporated on the 12th day of April, 1918. If these allegations are true, as the demurrer admits them to be, it follows that its corporate stock had been subscribed to at least the statutory amount. The subscription of appellee made in April or may, 1918, could have been made upon no implied condition as to the amount of additional subscriptions. The complaint therefore stated a cause of action.

There being no error in the record, the judgment of the district court is affirmed; and it is so ordered.

RAYNOLDS, C. J., and PARKER, J., concur.