[No. 2430.  Sept. 3, 1920.]

## MELHOP v. COSTA et al.

### SYLLABUS BY THE COURT.

In a suit on a promissory note, where the defense was failure of consideration, plaintiff moved for an instructed verdict, which was overruled. The jury thereupon returned a verdict for the plaintiff, finding a failure of consideration as to one-half the face value of the note. Evidence reviewed. Held, that the court should have sustained plaintiff's motion for an instructed verdict, as there was no evidence of failure of consideration.

Appeal from District Court, Chaves County; McClure, Judge.

Action by F. L. Melhop against N. Costa and others. Demurrer to part of complaint sustained, verdict and judgment for plaintiff for part of the amount of note and interest and attorney's fees, and he appeals. Reversed and remanded, with directions.

J. D. MELL and W. A. DUNN, both of Roswell, for appellant.

W. E. ROGERS, of El Paso, Tex., for appellees.

### OPINION OF THE COURT.

ROBERTS, J.  Appellant sued appellees on a promissory note for $2,500, dated May 14, 1918, and due January 1, 1919, bearing interest at the rate of 10 per cent. per annum after maturity, and providing for attorney's fees. The complaint contained a further cause for some hay sold appellees by appellant, for which he recovered judgment for $75, the correctness of which is not disputed. Appellant, also sought to have the judgment on the note made a lien on certain cattle for which reason the contract leading up to the execution of the note was set up in the complaint.

The court sustained a demurrer to that part of the complaint claiming the lien, and the action of the court in sustaining the demurrer is not contested. The appellees answered the complaint, pleading failure of con-

sideration for the note. They set up the fact that the
note was given under a contract by which appellees
leased from appellant an alfalfa farm of 130 acres, to
be used by them for pasturing cattle and cutting hay;
that appellant had convenanted with them that the farm
had a good and sufficient water right, which provided,
and would provide, ample water for irrigating same;
and that he, appellant, would irrigate said land when
needed; that appellant had failed to properly irrigate
said land, for which reason the alfalfa had not grown as
it should, and the pasture had been short, and but little
hay was realized. Appellant replied, denying the agree-
ment set forth in the answer; alleged that the contract
was in writing, and that the parties all understood that
appellant had a water right in the Hagerman Irrigation
Company, and that he was leasing to said parties said
land and water right, and that he could supply for irri-
gation purposes only such water as he was entitled to
under such water right; that by reason of an unprece-
dented drought in the year 1919, appellant was able to
obtain only about 65 per cent. of the normal supply of
water, which he applied to said land. The case was tried
to a jury, and appellant asked the court to instruct the
jury to return a verdict in his favor on the note, which
was refused. After instructions by the court, the jury
returned a verdict for the appellant for $1,250 on the
note, and interest and attorney's fees, upon which judg-
ment was entered.

The points made here by appellant are: (1) That the
court should have sustained his motion for an instructed
verdict on the note for the full amount due, thereunder,
including interest and attorney's fees; and (2) that
there was no substantial evidence warranting the ver-
dict returned by the jury.

Appellees put in evidence the conversation leading up
to the execution of the written contract, which they claim
warranted the conclusion by the jury that appellant had
agreed to furnish sufficient water to irrigate the land
properly, regardless of drought or other unavoidable oc-

currences. The contract contained this clause, which was
the only reference to the matter:

"And it is further understood and agreed that said first
party is to do all .irrigating on said premises and to pay for
all water used from the irrigation company and to keep plenty
of water for said cattle to drink"

—which it will be observed does not so provide.

We quote from the evidence given by Mr. Thompson,
one of the partners, as to what was said at the time the
arrangement was made for leasing the farm:

"I was talking about it, and I asked him, I says: 'What
about this irrigation?' I says: 'I do not know how to irrigate
this land. I don't know nothing about irrigating land.' He
says: 'Well, I will irrigate it at the proper time.' He did not
specify how many times or anything about it. I did not un-
derstand, only I knew that irrigating was irrigating, but I did
not know how."

Mr. Thompson at different times while testifying gave
the substance of the conversation, but the above quotation
faiily represents all that he said on the matter. Mr.
Costa, the other partner, testified as follows:

"Q. What did he or you say about irrigating the place? A.
Why' we rented the land with water right because he had a
water right. I never rented a dry farm.

"Judge: Q. What did he say about irrigating? A. He never
said irrigation. I supposed he had water right from ditch.
That is why I leased the farm.

"Mr. Rogers: Q. In that conversation, Mr. Costa, did Mr.
Melhop say when he would put water on it? A. I understand
he would put the water if he could get it.

"Q. Is that what he said? A. Yes; if he get it."

The appellant in his testimony substantially agreed
with what Mr. Costa said—that the appellees had rented
the farm and water right, that he told them the extent
of the right, where it came from, and that he agreed
to apply the water to the land because the appellees were
cattle men and unfamiliar with irrigation. This testi-
mony, it will be observed, fails to sustain the allegations
of the answer to the effect that appellant had agreed to
supply all water needful for irrigation purposes.

In construing a contract it is proper for the court to notice the surrounding and attendant circumstances, and construe the language used in the light of such circumstances. Elliott on Contracts, § 1517. Here appellant was the owner of a farm to which was attached a water right calling for a specified amount of water during the irrigating season. The water came from a stream, which depended upon melting snow and rainfall. Appellees and appellant knew that under ordinary circumstances there would be available a sufficient amount of water to supply all water rights, but that in case of drought or other unavoidable occurrence, such as the breaking of the dam, etc., the water called for by the water right might not be available. It is unbelievable that appellant would contract to supply water regardless of the conditions named, or that appellees could have so understood. The evidence is conclusive that he applied all the water to the land to which he was entitled under his water right, and at such times as he could obtain it, and that he did the work in a proper manner. We think the court should have sustained his motion for an instructed verdict, and that he was entitled to recover the full amount of the note, together with interest and attorney's fees.

The case will be reversed and remanded, with instructions to enter judgment accordingly; and it is so ordered.

PARKER, C. J., and RAYNOLDS, J., concur.